UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

JAMES G. CORLEY,

                                                    Plaintiff,    **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE***

-against-

                               13-CV-4743 (BMC)

P.O. NABEEL SHAHID, Tax Registration No. 939457,
P.O. CYRIL ABRAHAM, Tax Registration No. 937932,
P.O. RONALD MOSS, Tax Registration No. 918036, P.O.
JAMES CAMPBELL, Tax Registration No. 945547,
SERGEANT SHUNPING MAO, Tax Registration No.
940417, CAPTAIN RODERICK DANTINI, Tax
Registration No. 906066 and THE CITY OF NEW YORK,

                                                  Defendants.

-------------------------------------------------------------------- x

## Preliminary Statement

Plaintiff James Corley brings this action pursuant to 42 U.S.C. § 1983 against defendants City of New York, Police Officer Nabeel Shahid, Police Officer Cyril Abraham, Police Officer Ronald Moss, Police Officer James Campbell, Captain Roderick Dantini, and Sergeant Shunping Mao (collectively, "defendants") alleging claims for excessive force under the Fourth Amendment, and alleging state law claims of assault and battery. Specifically, plaintiff claims that he was subjected to excessive force by defendants Police Officer Nabeel Shahid, Police Officer Cyril Abraham, Police Officer Ronald Moss, Police Officer James Campbell, Captain Roderick Dantini, and Sergeant Shunping Mao during the course of his June 2, 2012 arrest. Defendants, by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in support of their motion seeking the following *in limine* relief: (1) removal of the City of New York ("City") from the

1

caption of the case and preclusion of any reference to defense counsel as "City attorneys;" (2) preclusion of mentioning, or offering evidence concerning, the City's potential indemnification of the officer defendants; (3) preclusion of eliciting evidence concerning defendant police officers' disciplinary histories, prior lawsuits or personnel files; (4) preclusion of plaintiff requesting a specific monetary amount from the jury; (5) preclusion of plaintiff from referring to and offering evidence at trial of any New York City Police Department procedure or patrol guide provision; (6) preclusion of testimony regarding plaintiff's role in the events of September 11, 2001; (7) admission into evidence of plaintiff's prior arrest history; and (8) preclusion of plaintiff's purported medical expert.

## STATEMENT OF FACTS

Plaintiff claims that on June 2, 2012, between approximately 9:30 P.M. and 10:00 P.M., he was present at a restaurant known as The Dog & Duck, located at 45-20 Skillman Avenue, County of Queens, City and State of New York. See Second Amended Complaint at ¶ 20, annexed to the Declaration of Noreen Stackhouse ("Stackhouse Decl."), dated April 4, 2014 as Exhibit "A." It is undisputed that plaintiff double-parked his minivan in the street outside of the aforementioned premises while he went inside to have a meal, and that plaintiff stayed inside the restaurant to finish his meal even after he observed police officers arrive at the location. Id. at ¶¶ 22-25. Plaintiff admits that it was only once he observed a flatbed tow truck arrive at the scene and begin the process of towing his vehicle, that he finally exited the restaurant and approached his minivan. Id. at ¶¶ 26-29. Plaintiff then proceeded to slide his legs under the front bumper of his minivan, grab onto the frame of his minivan and lay down on the bed of the tow truck to prevent his minivan from being towed. Id. at ¶¶ 31-32. Plaintiff claims that defendants Police Officer Shahid and Police Officer Abraham pulled plaintiff off the flatbed,

dragged him on his back for approximately forty feet toward their Police Department motor vehicle, and subsequently handcuffed him. Id. at ¶¶ 33, 35, 40. Plaintiff further claims that as plaintiff was lying face down on the ground, handcuffed, one of the individual defendants kicked him twice in his left ribs, twice in his right ribs and once in his lower back. Id. at ¶¶ 39, 41, 44-45.

While Defendants admit that there was a struggle to remove plaintiff from underneath his vehicle, they deny any wrongdoing and maintain that the force used was reasonable, necessary and appropriate. Defendants further deny that they kicked plaintiff at any point during his apprehension. Notably, plaintiff admits that he plead guilty to Resisting Arrest as a result of this incident because he was, in fact, guilty of resisting arrest. See Excerpts from the Deposition of James Corley taken on January 2, 2014 ("Pl. Dep."), annexed to Stackhouse Decl. as Exhibit "B," at 96: 14-23.

Plaintiff's expert witness, Dr. Ronald A. Light, has prepared a report in which he concluded that plaintiff sustained multiple left and right sided rib fractures as a result of "significant and multiple blunt forces to [plaintiff]" on June 2, 2012. See Report from Dr. Ronald A. Light, dated January 8, 2014 (hereinafter "Light Report"), annexed to Stackhouse Decl. as Exhibit "C." Dr. Light purportedly based this opinion on a review of plaintiff's Elmhurst Hospital Center x-rays from June 2, 2012, plaintiff's self-reported history, and a physical examination of plaintiff taken on January 8, 2014, during which time Dr. Light noted that plaintiff stated he had fully recovered from his alleged injuries. Dr. Light also independently concluded that plaintiff has made a full recovery and made no findings that plaintiff sustained any permanent injury. See id. at p. 4.

# ARGUMENT

## POINT I

**THE CITY OF NEW YORK SHOULD BE REMOVED FROM THE CAPTION AND PLAINTIFF SHOULD BE PREVENTED FROM REFERRING TO DEFENSE COUNSEL AS "CITY ATTORNEYS."**

While plaintiff does not allege a municipal liability claim against the City of New York, the City of New York remains a defendant in this action on plaintiff's assault and battery claim based upon a *respondeat superior* theory of liability.[1] For the reasons stated herein, defendants respectfully request that this Court: (1) remove the City from the caption; and (2) prevent plaintiff from referring to defense counsel as "City attorneys" as it would be unduly prejudicial to defendants.

**A.    This Court Should Remove The City From The Caption.**

Defendants respectfully request that the Court remove the City of New York from the caption. As discussed above, the City of New York remains a defendant in this action solely under *respondeat superior* premised on the alleged actions of individually named defendants Police Officer Nabeel Shahid, Police Officer Cyril Abraham, Police Officer Ronald Moss, Police Officer James Campbell, Captain Roderick Dantini, and Sergeant Shunping Mao. There are no allegations that a policy or practice of the City of New York caused the alleged constitutional violations at issue in this matter, as plaintiff did not allege a municipal liability claim against the

---

[1] Defendants oppose any instructions with respect to these state law claims because, as a matter of law, it is duplicative of the federal claim of excessive force. See Castro v. County of Nassau, 739 F. Supp. 2d 153, 178, n.17 (E.D.N.Y. 2010) (same standard applies for § 1983 excessive force claim and state law assault and battery claims); see also Tianshu Li v. United States, 05 Civ. 6237 (NRB), 2009 U.S. Dist. LEXIS 96945, at *5, n.2 (S.D.N.Y. Oct, 8, 2009) ("As against law enforcement personnel, assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest.") (citation omitted).

4

City in his complaint. Campbell v. City of New York, et al., 09-CV-3306 (FB)(JO), 2011 U.S. Dist. LEXIS 144352, at *1 n.1.

It is unduly prejudicial to defendants for the City to remain in the caption for three main reasons. First, it falsely suggests that the City's conduct is at issue in the case. Under New York state law, "the doctrine of respondeat superior makes employers liable for negligent acts of their employees performed in the scope of their duties." Santa Medina v. Delta Air Lines, Inc., 09-CV-4018 (NGG) (LB), 2011 U.S. Dist. LEXIS 91174, at *15 (E.D.N.Y. Aug. 15, 2011) (internal citations omitted). Thus, plaintiff's claim against the City concerns the acts of the City's employees, Police Officer Shahid, Police Officer Abraham, Police Officer Moss, Police Officer Campbell, Captain Dantini, and Sergeant Mao, not the acts of the City itself. If the City remains in the caption, defendants stand to be unduly prejudiced by the jury's misapprehension of this fact.

Second, if the City is left in the caption the jury may be led to believe that there are a greater number of defendants in the action, thus potentially bolstering plaintiff's claim. Third, the appearance of the City could lead the jury to assume that the City will pay any damages award. As explained in Point II, *infra*, it is well settled that such apprehension causes undue prejudice, especially where, as here, it is respectfully submitted that the municipality's conduct is not at issue. See Jean-Laurent v. Hennessy, 05-CV-1155 (KAM) (LB), 2011 U.S. Dist. LEXIS 122767, at *45-46 (E.D.N.Y. Oct. 24, 2011).

As such, defendants respectfully request that the Court remove the City of New York from the caption.

B.  **Plaintiff Should Be Prevented From Referring To Defense Counsel As "City Attorneys."**

For these same reasons, defense counsel also respectfully request that the Court and plaintiff not refer to defense counsel as Attorneys for The City of New York or anything to that effect in the presence of the jury, but rather refer to defense counsel only as "defense counsel" or "counsel for the defendants." See Hancock v. City of New York, et al., 10 Civ. 7989 (JMF), Motion *In Limine* Rulings, at Docket Entry No. 53 (S.D.N.Y. Nov. 5, 2013)(precluding plaintiff from referring to defense counsel as "City attorneys"); Edwards v. City of New York, 08 CV 2199 (TLM), 2011 U.S. Dist. LEXIS 75300 at *14 (E.D.N.Y. July 13, 2011)("Defendant requests, and the Court agrees, that because New York City is no longer a defendant, defense counsel should be referred to as 'defense counsel' or 'corporation counsel'"). Accordingly, plaintiff should be precluded from mentioning or introducing evidence that defense counsel are City attorneys.

### POINT II

**PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR OFFERING ANY EVIDENCE REGARDING THE CITY OF NEW YORK'S POTENTIAL INDEMNIFICATION OF THE INDIVIDUAL DEFENDANTS.**

Plaintiff should be precluded from mentioning or offering any evidence that the City of New York *may* indemnify defendants Police Officer Nabeel Shahid, Police Officer Cyril Abraham, Police Officer Ronald Moss, Police Officer James Campbell, Captain Roderick Dantini, and Sergeant Shunping Mao should a jury find one or more of them liable. Such evidence or arguments lack any evidentiary value and seriously unduly prejudices defendants. If the jury is permitted to assume that the City of New York will pay a judgment, the jury may not carefully assess issues of liability, as it may create the impression for the jury that any potential

6

verdict against these individual defendants would be paid by the City of New York, which is commonly viewed as a "deep pocket" for the purposes of any potential judgment. This unfortunate prejudice is precisely the concern that motivated the drafters of the Federal Rules of Evidence to include Rule 411, which prohibits the admission of evidence of a defendant's liability insurance. See Fed. R. Evid. 411 Advisory Committee's Note ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds. McCormick § 168; Annot., 4 A.L.R.2d 761.").

Moreover, evidence of the City's potential indemnification should be precluded because it is not relevant. See Hancock v. City of New York, et al., 10 Civ. 7989 (JMF), Motion *In Limine* Rulings, at Docket Entry No. 53 (S.D.N.Y. Nov. 5, 2013)(precluding plaintiff from admitting evidence regarding the City's potential indemnification of the individual defendants); Edwards, 2011 U.S. Dist. LEXIS 75300, at *14-15 ("Indemnification is not relevant to any issue before the jury and plaintiff will not be permitted to inform the jury that defendant might be indemnified by the City"); Jean-Laurent v. Wilkinson, 05 Civ. 583 (VM), 2009 U.S. Dist. LEXIS 20472, at *8 (S.D.N.Y. Mar. 13, 2009)(precluding plaintiff from mentioning City's potential indemnification of officers); Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *24-25 (S.D.N.Y. Oct. 25, 2007) (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City of New York on relevancy grounds)(internal citations omitted); see also McGuire v. Bridgeport & Port Jefferson Steamboat Co., 00 Civ. 5951 (WK), 2001 U.S. Dist. LEXIS 19753, at *4 (S.D.N.Y. Nov. 29, 2001)(finding indemnification evidence not relevant at trial); Provost v. Newburgh, 262 F.3d 146, 164 (2d Cir. 2001) (holding that it was improper for the district court to instruct the jury to consider the

individual defendant's ability to pay in determining punitive damages aware where the defendant did not offer evidence of his financial resources at trial).

## POINT III

**PLAINTIFF SHOULD BE PRECLUDED FROM ELICITING EVIDENCE OF DISCIPLINARY HISTORIES, PRIOR LAWSUITS.**

Evidence of any prior lawsuits and complaints against defendants Police Officer Nabeel Shahid, Police Officer Cyril Abraham, Police Officer Ronald Moss, Police Officer James Campbell, Captain Roderick Dantini, and Sergeant Shunping Mao, as well as any responsive pleadings and disciplinary histories of the defendants, should be precluded under Rules 402, 403, 404(b), 608, 611, 802, and 901. Such information is not relevant, is more prejudicial than probative, is confusing to the jury, wastes time, and cannot be used to show that these officers had a purported propensity to allegedly violate plaintiff's constitutional rights, and would also cause the officers undue embarrassment and harassment. Moreover, mere allegations contained in prior lawsuits or complaints filed against these individual defendants are inadmissible hearsay under Rule 802, and fail to satisfy the authentication requirement under Rule 901. Therefore, plaintiff should be precluded from questioning about, or offering any evidence of, defendants' prior lawsuits, responsive pleadings, and disciplinary histories.

Plaintiff's attempt to proffer evidence of prior lawsuits is nothing more than a disguised attempt to introduce propensity evidence against defendants and circumvent Rule 404(b), which expressly prohibits plaintiff from introducing evidence of prior and subsequent lawsuits against defendants in order to prove any alleged propensity to purportedly violate his constitutional rights. See Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991) (upholding

the exclusion at trial of all references to the defendant police officers' history of prior civilian complaints pursuant to Rules 404(b) and 403.

Rule 404(b) states that evidence of past acts "to prove the character of a person in order to show action in conformity therewith . . ." is inadmissible. Under Rule 404(b), evidence of past acts are only admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." However, evidence of prior bad acts is not automatically admissible simply because the proponent has articulated some not-for-character purpose.

As the Supreme Court held in Huddleston v. United States, 485 U.S. 681, 688 (1988), the decision to admit evidence under Rule 404(b) also depends on "whether the danger of unfair prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Thus, Rule 404(b) requires a two-part analysis: first, whether the proposed evidence fits within one of the "exceptions" provided by the Rule; and second, even if it does, a balancing test under Rule 403, of whether the evidence's probative value is substantially outweighed by the potential for jury confusion or prejudice. Lombardo v. Stone, et al., 99 Civ. 4603 (SAS), 2002 U.S. Dist. LEXIS 1267, at *8 (S.D.N.Y. 2002); see also Advisory Committee Notes to Fed. R. Evid. 404(b). Here, inquiry about any disciplinary histories, and other civil rights claims could not be used to establish any of the 404(b) exceptions because plaintiff has no claim for municipal liability.

Furthermore, in addition to the lack of relevance under Rule 402, evidence of prior lawsuits and disciplinary histories against defendants is confusing, a waste of time, and prejudicial, and thus should be excluded pursuant to Rule 403. If plaintiff is permitted to inquire

about prior lawsuits and disciplinary histories, defendants would need to offer evidence in defense of these mere allegations, resulting in "mini-trials" that would only lengthen this trial and confuse the issues for the jury. Moreover, the jury could choose to punish defendants for unproven allegations, or could infer that defendants are inclined to violate plaintiff's civil rights by the mere existence of prior lawsuits or complaints against them. See Huddleston v. United States, 485 U.S. 681, 686 (1988) (holding that "[t]he [offering party] may not parade before the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo"). Additionally, similar act evidence "should be admitted only if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." Id. at 685. Because evidence of disciplinary histories and prior lawsuits – and any responsive pleadings – would lack any substantial probative value, it should be excluded under Rule 403.

Finally, documentary evidence of prior lawsuits or disciplinary histories against defendants constitutes inadmissible hearsay under Rule 802. That is because a prior lawsuit or complaint contains allegations, and is not evidence that the defendant officer did commit the alleged prior bad act; the hearsay rule would not allow the contents of a complaint to establish the truth of the matter asserted. In addition, prior lawsuits fail to satisfy the authentication requirement under Rule 901.

For the foregoing reasons, plaintiff should not be permitted at trial to inquire about, or to introduce evidence of, prior disciplinary histories or lawsuits (and responsive pleadings thereto) brought against defendants Police Officer Nabeel Shahid, Police Officer Cyril Abraham, Police Officer Ronald Moss, Police Officer James Campbell, Captain Roderick Dantini, and Sergeant Shunping Mao.

## POINT IV

### PRECLUSION OF PLAINTIFF REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY.

While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award. Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003, 1016 (2d Cir. 1995). Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. Id.; see also Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974)("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel . . ."). The Court in Consorti went on to state:

> A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. . . . We encourage trial judges to bar such recommendations.

Consorti, 72 F.3d at 1016. As such, plaintiff should be precluded from suggesting a specific dollar amount to the jury during his opening statement, during the testimony of any witness and/or during summation.

## POINT V

### PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO OR OFFERING THE PATROL GUIDE INTO EVIDENCE AT TRIAL.

Plaintiff should be precluded from referring to and offering any portion of the Patrol Guide into evidence on the grounds that it is irrelevant to any disputed issue. Alleged violations of the Patrol Guide by a defendant or non-parties are irrelevant to the determination of

11

whether plaintiff's constitutional rights were violated. Thus, the Patrol Guide should be precluded pursuant to Fed. R. Evid. 402 and 403.

First, the standards set forth in the Patrol Guide are merely guidelines established by the New York City Police Department ("NYPD") and are not the standards of the U.S. Constitution. The Patrol Guide is voluminous and should not be used to scrutinize the finer details of wholly lawful police conduct using minor guidelines. Galapo v. City of New York, 95 N.Y.2d 568, 574-75 (2000) (holding that "the Patrol Guide is an internal manual – nearly 1,500 closely printed pages – containing thousands of rules, procedures and policies adopted by the Police Commissioner for the governance, discipline, administration and guidance of the Police Department…[i]t is not a body of law nor regulation establishing clear legal duties that should serve as a basis for civil liability of municipalities"). In light of plaintiff's claims that his constitutional rights were violated, any of these NYPD guidelines, whether followed to the letter or not, are irrelevant to the determination of whether plaintiff's constitutional rights were violated. See Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996) (violations of police rules regarding backup and radios not relevant to excessive force); Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir. 1991) (violation of procedure in failing to call for backup or use a flashlight irrelevant to excessive force claim); Woods v. Jefferson City Fiscal Court, 2003 U.S. Dist. LEXIS 605 (W.D. Ky. Jan. 8, 2003) (in excessive force claim, "whether an officer followed or violated police department policy or guidelines is not relevant under Graham v. Connor", 490 U.S. 386 (1989); Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983"); Romero v. County

of Lake, 60 F.3d 702, 705 (10th Cir. 1995) ("violations of state law and police procedure do not give rise to a 1983 claim"). Any Patrol Guide section should therefore be precluded under Fed. R. Evid. 402, which prohibits the admission of evidence which is not relevant.

Any reference to alleged "violations" of the Patrol Guide, meaning that an officer did not follow the exact guidelines, would only serve to confuse the jury. The jury will be called upon to determine whether the defendant officers violated plaintiff's constitutional rights. If the jury is presented with portions of the Patrol Guide, it is likely to wrongly assume that the Patrol Guide sets out the standard by which they are to evaluate the defendants' actions, notwithstanding a contrary instruction from the Court. In light of the foregoing, any reference to or inquiry regarding so-called "violations" of the Patrol Guide are irrelevant, unfairly prejudicial, and would only confuse the relevant issues and the jury. Accordingly, the Patrol Guide should be precluded pursuant to Rules 402 and 403.

## POINT VI

### PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING ABOUT THE EVENTS OF SEPTEMBER 11, 2001.

Plaintiff should be precluded from testifying about his role as a first responder in connection with the events of September 11, 2001 ("9/11"), because such testimony would be unduly prejudicial to defendants under Fed. R. Evid. 403. Plaintiff is a former firefighter who retired from the New York City Fire Department ("FDNY") in 2010. See Pl. Dep., Stackhouse's Decl., Exhibit C, at 16: 6-22. Plaintiff testified at his deposition that he was working as a firefighter on 9/11, and that he arrived at the World Trade Center just after the second tower collapsed. Id. at 19: 1-4. Plaintiff further testified that three men from his firehouse died on

13

9/11, and that he subsequently began having "problems with depression and anxiety" for which he eventually took medical leave. Id. at 18: 17-25, 19: 2-4.

While plaintiff's prior history of emotional damage is certainly relevant to contravert plaintiff's claims of emotional distress and damage as a result of the instant incident, defendants submit that plaintiff should be precluded from testifying about the purported origin of same because it would prejudice the defendants significantly. Specifically, allowing the jury to hear evidence that plaintiff was a first responder on the day of a terrorist attack so deeply engrained in the minds of every American citizen would make plaintiff appear unusually sympathetic, and would therefore unduly prejudice the defendants.

## POINT VII

### DEFENDANTS SHOULD BE PERMITTED TO OFFER EVIDENCE OF PLAINTIFF'S PRIOR ARREST HISTORY TO CONTRAVERT HIS CLAIMS OF EMOTIONAL DAMAGE.

Plaintiff, in his complaint, alleges that as a result of this incident he suffered, and continues to suffer, serious and permanent physical and psychological injuries and has also incurred medical expenses for the treatment of those alleged injuries. See Complaint, Exhibit A, at ¶52. Defendants submit that they should be permitted to inquire into plaintiff's prior arrest history to contravert his claims of emotional damage.

At plaintiff's deposition, he testified that he has been arrested on approximately four prior occasions. In each of those prior cases, he was arrested for assaulting another individual, and in each of those cases plaintiff accepted a plea agreement for which mental health counseling was a condition of said agreement. See Pl. Dep., Stackhouse's Decl., Exhibit B, at 26: 25; 27:1-3; 28: 9-16; 29: 8 – 14; 31: 1 – 4; 32: 9-19; 35: 21-25; 36: 1-15; 41: 6-13; 43: 10-21. Evidence of these incidents is clearly relevant to a jury's consideration of his damages in this

14

case. Banushi v. P.O. Palmer, No. 08 Civ. 2937 (KAM), 2011 U.S. Dist. LEXIS 419, at *7-9 (E.D.N.Y. Jan. 4, 2011) ("Because a plaintiff who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained, . . . defendants may inquire into plaintiffs past arrests and incarcerations during the damages phase of the trial.")(internal citations and quotation marks omitted)). This is true regardless of the fact that plaintiff is not alleging a claim of false arrest here, for the plain fact that plaintiff attended mental health counseling in connection <u>with</u> <u>each</u> of his <u>prior</u> arrests. Defendants should be allowed to explore the lack of causation for plaintiff's claimed emotional injuries as a result of this arrest by eliciting evidence of his prior arrest and counseling history. Moreover, plaintiff's claim that he incurred medical expenses as the result of mental health counseling is extremely misleading, as the counseling he sought in connection with his plea agreement was Court-ordered.

Accordingly, because plaintiff put his own mental condition at issue by claiming that he was emotionally damaged as a result of this <u>specific</u> arrest, defendants should be permitted to inquire into plaintiff's prior arrests and the mental health counseling he sought as attendant thereto.

### POINT VIII

**PLAINTIFF'S PURPORTED MEDICAL EXPERT SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL IN THIS ACTION.**

Plaintiff's proffered medical expert, Dr. Ronald A. Light, prepared a report in which he concluded that plaintiff sustained multiple left and right sided rib fractures as a result of "significant and multiple blunt forces to [plaintiff]" on June 2, 2012. See Light Report, Stackhouse's Decl., Exhibit "C," at p. 4. Defendants submit that the Court should preclude Dr.

15

Light from testifying at trial because his testimony would not assist the trier of fact, would be confusing to the jury and would be unduly prejudicial to the defendants.

The Federal Rules of Evidence permit opinion testimony by experts when the witness is "qualified as an expert by knowledge, skill, experience, training, or education …." Fed. R. Evid. 702. Rule 702 further requires the district court to inquire as to whether the expert's testimony (as to a particular matter) will "assist the trier of fact." See Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005). The Second Circuit has consistently held, in that respect, that expert testimony that "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it," United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991), by definition does not "aid the jury in making a decision"; rather, it "undertakes to tell the jury what result to reach," and thus "attempts to substitute the expert's judgment for the jury's." United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994).

Here, Dr. Light's testimony would not aid the jury in making a decision because he fails to reach any definitive conclusion about the exact mechanism or cause of plaintiff's alleged injuries. In the first instance, Dr. Light fails to define what he means by "significant . . . blunt forces," or provide the methodology by which he reached the conclusion that the blunt forces responsible for plaintiff's injuries were, in fact, "significant." Moreover, Dr. Light fails to opine on the exact nature or mechanism of the "blunt forces" at work in this case. As such, his opinion will not assist the jury in determining whether plaintiff's alleged injuries were sustained as the result of being kicked by police officers on June 2, 2012, or by some other mechanism during the time he was lying on the ground between his minivan and the flatbed of a tow truck actively resisting arrest.

In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Indeed, the Supreme Court has noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations. See, Daubert v. Merrell Dow Pharms., 509 U.S. 579, 595 (U.S. 1993) ("'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'")(quoting Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991))); United States v. Young, 745 F.2d 733, 766 (2d Cir. 1984) (Newman, J., concurring) (noting that "the very breadth of the discretion accorded trial judges in admitting [the expert opinion of a detective testifying as to the criminal nature of a defendant's activities] under Rules 702 and 403 should cause them to give the matter more, rather than less, scrutiny. A trial judge should not routinely admit opinions of the sort at issue here and should weigh carefully the risk of prejudice.").

As noted *supra*, Dr. Light's expert testimony is devoid of any probative value as his conclusion is essentially that plaintiff sustained multiple rib fractures as a result of blunt trauma – a diagnosis which is also contained in plaintiff's Elmhurst Hospital medical records. In that regard, his testimony is also duplicative of the information contained in plaintiff's Elmhurst Hospital medical records, and therefore should be excluded under Fed. R. Evid. 403 because it is cumulative. As such, defendants submit that Dr. Light's potential testimony is devoid of any probative value and as a result, he should be precluded from rendering same at trial.

Furthermore, Dr. Light's testimony would be extremely prejudicial to the defendants based upon the potential effect it could have on the jury. Should Dr. Light be permitted to testify as an expert, the jury would presumably give his opinion more weight than a lay witness. Defendants submit that this would be extremely problematic in this matter as the jury could disregard or fail to recognize that Dr. Light was not a witness to the incident and that he bases his conclusions regarding the mechanism of plaintiff's injuries solely on plaintiff's own self-serving statements. Such testimony would also represent a waste of the jury's time as after hearing same, they would not be in any more of a position to resolve the factual issue of causation with respect to plaintiff's injuries.

Accordingly, defendants respectfully request that the Court preclude Dr. Light from testifying at trial because his testimony would not assist the trier of fact and would be confusing and prejudicial.

## POINT IX

### DEFENDANTS RESERVE THEIR RIGHT TO FILE SUPPLEMENTAL MOTIONS *IN LIMINE*.

Defendants City of New York, Police Officer Nabeel Shahid, Police Officer Cyril Abraham, Police Officer Ronald Moss, Police Officer James Campbell, Captain Roderick Dantini, and Sergeant Shunping Mao respectfully reserve their right to object to any *in limine* motions submitted by plaintiff and to file supplemental motions *in limine*.

## CONCLUSION

For the reasons set forth above, defendants respectfully submit that their motions *in limine* should be granted in their entirety.

Dated:       New York, New York
              April 4, 2014

                            Zachary W. Carter
                            Corporation Counsel of the City of New York
                            Attorney for Defendants
                            100 Church Street
                            New York, New York 10007
                            (212) 356-2375/2371

By: _____
      Noreen Stackhouse, Esq.
      Assistant Corporation Counsel

cc:     Alan D. Levine, Esq. (by ECF)
        Law Offices of Alan D. Levine
        *Attorney for Plaintiff*
        80-02 Kew Gardens Road, Suite 302
        Kew Gardens, New York 11415